**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN VLAHAKIS and E. VAN VLAHAKIS DESCENDANTS TRUST NO. 2 U/T/A DATED 10/31/12; | ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 1:15-cv-1666 |
| vs. | ) ) | Judge John Robert Blakey |
| KELLY VLAHAKIS-HANK S; VENUS LABORATORIES, INC.; and THE E. VAN VLAHAKIS FAMILY TRUST U/T/D 2/26/86, AS AMENDED, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

**PLAINTIFF'S VERIFIED THIRD AMENDED
COMPLAINT FOR EQUITABLE AND OTHER RELIEF**

NOW COMES, Plaintiffs, JOHN VLAHAKIS ("John") and E. VAN VLAHAKIS DESCENDANTS TRUST NO. 2 U/T/A DATED 10/31/12 ("John Trust"); by and through their attorneys, for their Verified Third Amended Complaint for Equitable and Other Relief against the Defendants, KELLY VLAHAKIS-HANKS ("Kelly"); VENUS LABORATORIES, INC.; and THE E. VAN VLAHAKIS FAMILY TRUST U/T/D 2/26/86, AS AMENDED ("Van Trust"), alleges and states as follows:

**SUMMARY OF LAWSUIT**

1. John and Kelly, currently through trusts, are second-generation owners of Venus Laboratories, Inc., also known as Earth Friendly Products ("EFP"). Kelly, in her capacity as trustee, is the controlling shareholder and chief executive of EFP, and has abused her control by freezing John out of EFP's management, operations, and employment, and other oppressive tactics. Kelly has also refused to consider the sale of EFP at a valuation that is approximately

four times greater than an alleged valuation claimed by Kelly, depriving EFP and its beneficial shareholders of the benefit of such a sale. Kelly is also the trustee to one trust that holds EFP stock, partly for the benefit of John.

2.    Through this lawsuit, John seeks equitable and other relief, including damages, to redress Kelly's oppression of him. John also seeks declaratory relief to ensure that Kelly complies with her fiduciary duties to review and entertain any good faith proposals to buy EFP and maximize shareholder value.

3.    John also seeks to enforce his rights as a shareholder and director to inspect EFP's corporate records. Kelly has wrongfully refused to honor John's inspection rights, producing only some of the corporate records to which he is entitled under Illinois law. Further, John seeks to enforce EFP's promise to negotiate an employment contract and a right of first refusal with him in good faith.

## THE PARTIES, JURISDICTION AND VENUE

4.    John is an Illinois resident. John is a rightful EFP officer (President, or alternatively, Executive Vice-President), one of its two rightful directors and is the trustee and sole beneficiary to the John Trust, which owns 19.21% of the outstanding and issued stock of EFP ("EFP Stock"). John is also a beneficiary to the Van Trust. Altogether, John beneficially owns at least, and approximately, thirty-two percent (32%) of EFP's outstanding stock. Defendants have unequivocally admitted that John personally is an EFP shareholder in these proceedings, including, but not limited to, at a transcribed February 4, 2015 hearing.

5.    John is the sole trustee to the John Trust, a California trust which owns real and personal property either located in Illinois or substantially connected to Illinois including EFP Stock.

- 2 -

6.     EFP is an Illinois corporation that is in the business of manufacturing and distributing environmentally-friendly cleaning products for household use.  EFP has been in business since the early 1960's.  Its website can be found at www.ecos.com.  EFP's principal office is located in Addison, DuPage County, Illinois.

7.     Kelly is EFP's Chief Executive Officer, one of its two rightful directors and as trustee, owns 97% of EFP's voting stock and also owns EFP non-voting stock.  Kelly is a daughter of Van (but has a different mother than John).  Kelly is also the trustee to the Van Trust, to which John and his sister Elli Manolas ("Elli") are beneficiaries.

8.     Kelly is a California resident.  This Court has personal jurisdiction over Kelly pursuant to 735 ILCS 5/2-209(a)(1) as Kelly transacts business in Illinois; pursuant to 735 ILCS 5/2-209(a)(2) as Kelly has committed tortious acts against Plaintiffs in Illinois; pursuant to 735 ILCS 5/2-209(a)(11) as Kelly has committed breaches of fiduciary duty against Plaintiffs in Illinois; and/or 735 ILCS 5/2-209(a)(12) as Kelly is an officer and director of EFP, an Illinois corporation.

9.     The Van Trust was established under the laws of the State of California.  The Van Trust is named as a nominal defendant only, for the purposes of John's derivative claim on behalf of the Van Trust, Count VII. The Van Trust currently owns 68.19% of EFP's outstanding and issued stock.  The Van Trust stock, however, should soon be distributed one-third to each of John, Kelly and Elli pursuant to Van's estate planning.  This Court has personal jurisdiction over the Van Trust pursuant to 735 ILCS 5/2-209(a)(1), (a)(3) and (a)(10) as the Van Trust transacts business and owns real estate in Illinois (including, but not limited to, through its ownership of EFP, a company that does business in Illinois) and pursuant to 735 ILCS 5/2-

209(a)(7) as the relevant trust agreement is substantially connected with Illinois for the reasons alleged herein.

10.     Non-party Elli is another daughter of Van's.  Further, non-party Olga Vlahakis ("Olga") is Van's former wife and is John and Elli's mother.  Both Elli and Olga also own EFP non-voting stock (and Olga owns EFP voting stock).  A summary of EFP's stock ownership is attached as Exhibit A, including stock that John owns indirectly not only through the John Trust, but also as a beneficiary, along with Kelly and Elli, to the Van Trust.

11.     Venue is proper in this District because EFP's principal office is located in this District, because EFP does business in this District and because a substantial part of the events or omissions giving rise to John's claims occurred in this District.

## SUMMARY OF THE PARTIES' RELATIONSHIPS

12.     John is a son of the late Van Vlahakis ("Van"), the founder of EFP, and is Kelly's half-brother.  John and Kelly have kept separate EFP offices at all relevant times, with John in Illinois and Kelly in California.

13.     John has been working at EFP since 1975 and his job titles over those years have included Salesman, Quality Control lab assistant, Vice-President, Executive Vice-President and President (since 1993).  John was instrumental to EFP's success and growth, as it has become a company worth at least $150,000,000 due in large part to John's decades-long dedication to EFP.

14.     EFP, like many family-owned businesses, was often informal in its governance. For example, Van and John were at times both referred to as EFP's "President," internally and externally.  Both Van and John performed the function of EFP's President at relevant times. John, with full knowledge of Kelly, Van and EFP's accountants, signed EFP tax returns for

numerous years, including the years 2004 through 2007, as "President" of EFP. Additionally, John executed an agreement with an EFP broker on or about July 22, 2014 as EFP's "President."

15.     Further, Kelly's subordinates have prepared badges for John to represent EFP at two trade shows in 2014, with badges stating that John was EFP's President. Also, business cards issued by EFP to John have stated his EFP title as "President." These are just a few examples of EFP documentation representing John as EFP's President.

16.     Additionally, in or before June 2014, Kelly represented that she would accept John's full resumption of his status as EFP President once pending criminal charges against John were resolved, as they were in or after June 2014.

17.     Kelly has otherwise acknowledged that John was, or should have been, at relevant times, either an "Executive Vice-President" or "Vice-President" of EFP. For example, Kelly did so by and through counsel in a November 7, 2014 letter to John's counsel, which noted that EFP had intended to elect John as EFP's Executive Vice President effective January 4, 2011 through an EFP director resolution (*see*, Exhibit G hereto). Additionally, in an October 24, 2014 email to John, Kelly purported to "offer" John the title of "Vice President, Key Accounts" at EFP (*see*, Exhibit D hereto). (John avers that this "offer" was nothing more than a pretense, as alleged herein, but it does demonstrate Kelly's recognition of some officer status of John's.)

## KELLY'S OPPRESSION OF JOHN AND BREACH OF DUTIES TO EFP

18.     Van unexpectedly and suddenly passed away on April 6, 2014.

19.     Within a month of Van's death, Kelly was named EFP's Chief Executive Officer (CEO) and Treasurer, through an EFP resolution signed by both Kelly and John, as directors. A

true and correct copy of this May 4, 2014 resolution is attached hereto and incorporated herein as Exhibit B. Accordingly, as of May 4, 2014, Kelly was one of EFP's two directors, its controlling shareholder and its top officer. Unfortunately, Kelly has abused the control and discretion afforded to her to oppress John, as alleged herein. Kelly's oppression is continuing and ongoing as of the filing of this Third Amended Complaint.

20.     For example, Kelly has terminated the employment by EFP of at least one senior level employee loyal to John, as part of her strategy to freeze John out of EFP. Along those lines, Kelly has also wrongly accused EFP employees of insubordination because they are loyal to John in order to minimize and threaten those employees.

21.     Further, Kelly has concealed EFP business meetings from John, even threatening to physically prevent him from attending meetings, including, but not limited to, a meeting in Florida in November 2014.

22.     Also, even prior to her removal of John as an EFP officer, director and employee, Kelly hired EFP employees without John's input, including, but not limited to, EFP's Chief Financial Officer.

**Kelly's Refusal To Negotiate John's Proposal To Purchase EFP In Good Faith**

23.     On October 20, 2014, John addressed a proposal to Kelly to purchase all of the EFP Stock ("John's Proposal"). A true and correct copy of John's Proposal is attached as Exhibit C. Kelly failed and refused to negotiate John's Proposal in good faith, despite the fact that it offers a valuation that is multiple times (or approximately $115,000,000) greater than another valuation cited by Kelly ("Kelly Valuation").

24.     Kelly's first response to John's Proposal after receiving it was not to reply to the proposal in substance and good faith, but instead to implicitly threaten John's employment at

- 6 -

EFP, as set forth in the opening paragraph to Kelly's October 24, 2014 email to John, excerpted in part below:

> **From:** Kelly Vlahakis <kelly@ecos.com>
> **Date:** October 24, 2014 at 4:51:17 PM CDT
> **To:** John Vlahakis <jv@ecos.com>
> **Cc:** "Cahr, Darren (Darren.Cahr@dbr.com)" <Darren.Cahr@dbr.com>,
> "tskallas@thompsoncoburn.com" <tskallas@thompsoncoburn.com>
> **Subject: Job offer**
>
> *Dear John:*
>
> *I received your letter of October 20th, and I have referred it to the company's lawyers and accountants for review and response. You should be receiving that within the next few days. Before I received the letter, I had been giving thought to the role you could play in the company moving forward. Below I have outlined a job description that I believe captures your strong marketing and sales skills.*

A true and correct copy of Kelly's October 24, 2014 email is attached as Exhibit D. Kelly's email purported to demote John from President to "Vice-President," and gave him an unreasonable and artificial deadline of October 31, 2014 to reply. Overall, Kelly's email was another attempt to marginalize John as to EFP.

25. On October 31, 2014, John, in his capacity as EFP President, called a Special Meeting of EFP's directors (John and Kelly) for the purpose of considering John's Proposal. The special directors' meeting was to occur on November 10, 2014. A true and correct copy of John's October 31, 2014 Notice of the Special Directors' Meeting ("John's October 31 Meeting Notice") is attached as Exhibit E.

26. After receiving John's October 31 Meeting Notice, Kelly wrote John a November 3, 2014 email that excluded him from specified and upcoming EFP company meetings. A true and correct copy of Kelly's November 3, 2014 email is attached as Exhibit F. Thereafter, Kelly directed attendees at those same meetings to not share with John the information that was discussed at those meetings.

27.     On November 7, 2014, the last business day before the meeting, Kelly advised, through counsel, that she would not attend the meeting, thereby blocking a quorum from occurring pursuant to EFP's bylaws (which require a majority of directors to attend a meeting to allow for a quorum).  Kelly's November 7, 2014 letter also recited that Kelly had stripped John of his position as EFP's President, which he had held for twenty-one years.  A true and correct copy of Kelly's November 7, 2014 letter is attached as Exhibit G.

28.     Further, on or about December 3, 2014, Kelly purported to formalize her removal of John as EFP's President, by naming herself as President.  A true and correct copy of documentation relating to this purported action is included in Exhibit H.

29.     Eventually, on November 17, 2014, Kelly, through counsel, rejected John's Proposal without any explanation, only stating that "the Company is not for sale at this time." A true and correct copy of Kelly's November 17, 2014 letter is attached as Exhibit I.

**Kelly's Refusal To Fully Honor John's Rights To Inspect EFP Records**

30.     On October 31, 2014, John served two demands to inspect EFP's corporate records upon EFP and Kelly ("Records Demands").  One Records Demand was made pursuant to 805 ILCS 5/7.75 (inspection rights for shareholders) ("Shareholder's Demand").  The other Records Demand was made pursuant to John's status as an EFP director ("Director's Demand").  A true and correct copy of the Records Demands are attached hereto and incorporated herein as Exhibit J.    Under Illinois law, corporate directors have broader inspection rights than shareholders.

31.     Kelly initially directed corporate counsel to make improper objections to John's Records Demands.  For example, attached hereto and incorporated herein as Exhibit K is a true and correct copy of counsel's November 11, 2014 letter that objected to John's Records

Demands partly on the basis that John had not stated a "proper purpose" under Illinois for discrete demands.  Not only did John do so, Illinois law does not require a director to state a proper purpose for a records demand.

32.     Eventually, when John confronted Defendants on the impropriety of the objections, Defendants appeared to capitulate and scheduled John's records inspection.  This concession came after a time period where EFP, at Kelly's directive, "dragged its feet" and otherwise obstructed in response to the Records Demands.

33.     John and his agents conducted a records inspection pursuant to the Records Demands at EFP's corporate offices in Addison, Illinois on December 3, 2014.  EFP, on Kelly's directive, failed and refused to produce significant types of documents demanded by John in his Records Demands, including, but not limited to:  all information relating to a possible third-party proposal to buy EFP (and/or to engage in another major transaction with EFP); all financial data; information relating to other possibly significant transactions or contemplated transactions involving EFP; invoices for professional services (including, but not limited to, those of lawyers or accountants); contracts to which EFP was a party; internal company emails referencing John; documentation of tax payments made by EFP in 2014; documentation of dealings with EFP lenders; and, other documents.

34.     Accordingly, John's records inspection rights were rendered illusory by Kelly, as John did not receive all of the records to which he is entitled.

**Kelly's Oppressive And Retaliatory Removal Of John As An EFP Director**

35.     Within weeks of receiving John's Records Demands (one of which was based on John's status as an EFP director), Kelly, through counsel, threatened to remove John as an EFP director, another act of oppression.  This is despite the fact that John had been an EFP director

for thirty-five years and had signed a consent, as an EFP director, naming Kelly as CEO (Exhibit B). John had also taken other acts as an EFP director after Van's death.

36.     Kelly followed up with her threat to remove John as a director by issuing a November 17, 2014 "Notice of a Special Meeting of the Voting Shareholders of Venus Laboratories, Inc." ("Kelly's November 17 Notice") for the sole purpose of removing John as an EFP director. A true and correct copy of Kelly's November 17 Notice is attached hereto and incorporated herein as Exhibit L.

37.     On December 1, 2014, Kelly unilaterally, and over the objection of Olga, EFP's other voting shareholder, purported to remove John as a director of EFP. A true and correct copy of Kelly's December 1, 2014 documentation of the same is attached hereto and incorporated herein as Exhibit M.

38.     On December 10, 2014, Kelly, through counsel, attempted to address EFP's and Kelly's ongoing refusal to provide John with access to all documents to which he is entitled as an EFP shareholder and director, as embodied in the Records Demands. A true and correct copy of Kelly's December 10, 2014 correspondence is attached hereto and incorporated herein as Exhibit N. In this correspondence, Kelly advised that "we are willing to treat John Vlahakis as a Shareholder, however, he is no longer a member of the Board of Directors and no longer has a need for information in that capacity. As a Shareholder, his right to review documents is more limited."

39.     Accordingly, Kelly unilaterally removed John as an EFP director after he held that position for thirty-five years and after John served his Director's Demand. Then, Kelly utilized this act of oppression as a pretense to withhold corporate documents and information from John.

40.     Kelly also removed John as a director after John's October 31 Meeting Notice, through which John tried to discuss John's Proposal with Kelly as her co-director.  Once again, Kelly's purported removal of John was nothing more than an oppressive and retaliatory tactic.

41.     In an attempt to justify her oppressive act of removing John is a director, Kelly claimed, through counsel, at a February 4, 2015 hearing that Kelly removed John as a director because of John's alleged violation of the shareholder non-competition provision of EFP's 2012 "Shareholders' Agreement" ("Shareholders' Agreement").  Only EFP "shareholders" can be subject to the non-competition provision of EFP's *Shareholders'* Agreement.  Indeed, Kelly's words, through counsel, were as follows:  "Now, what was the reason for his [John's] removal as a director?  It was his violation of the shareholder agreement …It's just not oppressive to remove a director who's violated the company shareholder agreement . . . ."  This reason was never provided prior to Kelly's removal of John as an EFP director.

42.     Therefore, Defendants, for the first time in February 2015, alleged that John's violation of the non-competition covenant of the Shareholders' Agreement.  Again, this demonstrates the pretentious nature of Kelly's oppression.

43.     Defendants never cited this alleged basis prior to their removal of John as a director.  Hypocritically, Defendants have both acknowledged and denied John's shareholder status, depending on which story supports Kelly's specific act of oppression at hand.

**Kelly Closes John's Office**

44.     EFP has leased commercial office space located at 44 Green Bay Road in Winnetka, Illinois ("Winnetka Office") for approximately fourteen years.  Van established the Winnetka Office to enable John to work closer to his home, and indeed John has primarily worked out of the Winnetka Office for the past fourteen years.

45.    EFP also has afforded Kelly the same arrangement, as Kelly works from an EFP office in California that is close to Kelly's home.

46.    John has also supervised several EFP employees who have worked at the Winnetka Office.

47.    Through a December 18, 2014 email, at Kelly's direction, EFP's General Counsel advised John that EFP would terminate its lease at the Winnetka Office effective January 31, 2015.  John has also learned that EFP has threatened to terminate the other EFP employees who work from the Winnetka Office if they did not transfer to EFP's Addison, Illinois office. These particular employees are also loyal to John.

**Kelly Fires John By Email**

48.    On December 26, 2014, John spoke to Kelly by phone in an effort to resolve their various issues.  In that spirit, John sent Kelly a December 29, 2014 email that summarized how Kelly and he could move forward.  A true and correct copy of John's December 29, 2014 email is attached hereto and incorporated herein as Exhibit O.

49.    Kelly ignored John's overtures and attempts at resolution, failing and refusing to return John's calls in further follow-up of his December 29, 2014 email.

50.    John filed his Complaint against Kelly on January 5, 2015.

51.    On January 16, 2015, Kelly sent John a terse email through which she purported to fire John as an EFP employee (the "Termination Email"). A true and correct copy of the Termination Email is attached hereto and incorporated herein as Exhibit P.

52.    The Termination Email stated in part to John:  "Your medical and dental benefits will end today, and information regarding your 401(k) account and COBRA will be forwarded under separate cover."   The Termination Email also offered John no severance, despite EFP's

practice of doing so with other employees (calibrating the amount of the severance payment to years of service). John has about forty years of service as of the date of the Termination Email.

53.     The Termination Email also raised a new claim against John, to sue him for $700,000 arising out of an internal EFP shareholder account that was established on the advice of EFP's outside accountants. EFP also kept similar accounts in Van and Kelly's names. Kelly also threatened severe tax consequences to John arising out of this amount, another new claim of hers.

54.     The Termination Email was also in breach of a promise that EFP made to John before Van passed away, that John would be employed by EFP for his lifetime. Van's unexpected death in April, 2014 and Kelly's subsequent oppression precluded a final, signed employment agreement for John.

55.     The Termination Email cites no job performance issues as to John, nor could Kelly do so in good faith. For example, in Kelly's October 24, 2014 email to John (Exhibit D), Kelly admitted to John's "strong marketing and sales skills." Overall, John played an instrumental role in growing EFP to what it is today over his forty years of service to the company.

56.     Along those lines, Kelly states as follows in the Termination Email:

> This will confirm the termination of your employment from Earth Friendly Products, effective immediately. The reasons for your termination are too numerous to list here, but include your unauthorized dissemination of confidential corporate information, misrepresenting to third parties your authority with respect to the Company, and your efforts to sell the company despite being told that the Company is not for sale.

*See,* Exhibit P.

57.     Therefore, Kelly's only specified basis ("Alleged Specified Basis") for firing her brother was that he violated certain duties by "shopping" EFP for sale to third parties. On

February 4, 2015, John agreed to a temporary restraining order that would enjoin him from such shopping, without making any admissions as to misconduct. In doing so, John eliminated the Alleged Specified Basis for Kelly's purported termination of John.

58. In fact, however, Kelly had long known of John's attempts to gauge outside interest in purchasing EFP, given the fact that John never made any attempt to hide the same from her. For example, as reflected in Exhibit I hereto, John advised Kelly in June 2014 that he received a third party offer to buy EFP.

59. Additionally, Kelly learned of John's other alleged attempts to "shop" EFP through John's EFP emails, which John made no attempt to conceal or destroy.

60. As she did with John's director status, Kelly has cited John's alleged violation of the non-competition covenant of the Shareholders' Agreement as a basis to fire him, after the fact. Indeed, at a February 4, 2015 court hearing, Kelly, through counsel, announced a brand new reason to terminate John: "Once John claimed shareholder status on October 31st, he was in violation of that shareholders agreement noncompete provisions ...."

61. Then, on the other hand, and as further evidence of Kelly's oppression of John, Kelly, through counsel, claimed during the February 4, 2015 court hearing that John was **not** an EFP shareholder, and therefore did not have standing to assert any EFP shareholder rights or claims. Therefore, Kelly, literally on the same day, both admitted and denied John's shareholder status, further demonstrating her oppression towards John.

62. Additionally, EFP, for years, has paid amounts as "consultant fees" to shareholders or beneficial shareholders who perform no work for EFP ("Shareholder Payments"). Kelly, however, has failed and refused to pay John any Shareholder Payments after she terminated his employment, treating John differently than other EFP shareholders who

have received, and continue to receive, the Shareholder Payments despite the fact that they do not work for EFP.

### More On EFP's Promises Of Lifetime Employment To John

63.     EFP's promise of lifetime employment for John was discussed many times between the Parties, including at a January 14, 2014 meeting attended by Van, John, Kelly and counsel.  At that meeting, EFP and the Van Trust, by and through Van and two attorneys (Randy Godshall and David Rubenstein), provided John with certain assurances, including that EFP would employ him for his lifetime and other safeguards of John's shareholder rights.  The meeting concluded with all participants agreeing to document these safeguards.

64.     The Parties were discussing these issues in the context of succession planning for EFP.  Van, as EFP's patriarch, wanted to ensure that John's employment would not be threatened after Van's death with Kelly in control of EFP.

65.     In follow up, on March 27, 2014, mere days before Van's unexpected death, EFP and John, through counsel came to a preliminary agreement on EFP's lifetime employment of John.  Along those lines, in a March 27, 2014 email, EFP, through counsel, stated as follows:

> I discussed the points enumerated below with Van and have his responses.  I am happy to discuss them with you at your convenience.
>
> 1.     Protection of John's Salary.  Van is agreeable to enter into a very simple Employment Agreement with John that would protect his salary.  However, that agreement would need to have protections for the Company for "bad acts" which would not comprise bad job performance, but would cover bad faith items like competing with the Company or engaging in other acts which intentionally harm the Company (or which would be reasonably expected to do so).

A true and correct copy of EFP's March 27, 2014 email is attached hereto and incorporated herein as Exhibit Q.

66.     EFP, through counsel, also agreed very shortly prior to Van's death that EFP would provide John with a right of first refusal as to any EFP voting stock that Kelly sought to sell (the "John ROFR").  (See Exhibit Q).

67.     Accordingly, EFP and John came to at least a preliminary agreement on the issues of John's lifetime employment and the John ROFR (the "Preliminary Agreement"). At a minimum, this Preliminary Agreement required the Parties to continue to consummate their Preliminary Agreement in a final, written and signed agreement in good faith ("Formal Agreement").   EFP and John expressly agreed to continue to work towards the Formal Agreement, from the Preliminary Agreement, in good faith.  EFP breached its duty to do so in good faith, as Kelly used Van's death as an excuse to not only fail to consummate any Formal Agreement, but also to oppress John as alleged herein.

68.     Kelly's termination of John's employment affects John far greater than the general loss of income and reputation that accompanies any employment termination.  John is a beneficial shareholder of EFP, unlike the vast majority of EFP employees.  Kelly's termination of John's employment has denied John access to EFP's operations and his fellow employees, which cripples John's ability to protect EFP's value or otherwise diminish his minority interest.  John has also suffered extreme humiliation and indignity by virtue of his employment termination, given his lifelong involvement in EFP.

**Concerns About Kelly's Mismanagement Of EFP's Critical Tax Status**

69.     EFP has for decades been an Internal Revenue Code, Chapter 1, Subchapter S Corporation ("S-Corp"), as opposed to a Subchapter C corporation ("C-Corp").  One major advantage of an S-Corp when compared to a C-Corp is that S Corps do not pay any federal

income taxes. Instead, an S-Corp's income or losses are divided among and passed through to its shareholders.

70.     However, a company's S-Corp status can be disregarded by the Internal Revenue Service (IRS) when relevant requirements are not maintained.  While EFP has been under Kelly's sole control, in 2014, EFP lost its S-Corp status, causing significant potential or actual harm to EFP and its shareholders. Kelly did not notify John of this circumstance when she first learned of it on or before December 8, 2014, which allegedly was the date that the Defendants first received any notification from the IRS that it revoked EFP's S-Corp status.

**Standing And Demand Futility**

71.     The John Trust, by and through John as its trustee, has standing to bring the claims alleged on behalf of the John Trust herein, as the John Trust is an EFP shareholder.

72.     John individually has standing as Defendants have admitted that John is an EFP shareholder, as alleged herein, including, but not limited to, Defendants' assertions that John is subject to the non-competition provision of the Shareholders' Agreement because he is an EFP shareholder.  Additionally, Defendants have also recognized John's rights as a shareholder to inspect corporate records pursuant to 805 ILCS 5/7.75, as set forth in Exhibit N where Defendants state in part:  "we are willing to treat John Vlahakis as a Shareholder."

73.     Alternatively, Kelly has wrongfully prevented the distribution of stock from the Van Trust to John in an effort to oppress him and to, at times, deny John's shareholder status. Accordingly, Defendants should be estopped from denying John's shareholder status to the extent they seek do to so.

74.     Further, John, individually, has standing and/or equitable standing to bring the claims asserted herein.  This is especially true to the extent that Kelly has refused to bring claims against herself and on behalf of the Van Trust.

75.     John has not made demand upon Kelly to bring suit on behalf of the Van Trust or EFP against Kelly.  Doing so would be futile since John would essentially be asking Kelly to sue herself.  Additionally, Kelly's communications have made it clear that she intends to fight John on the various issues raised in this lawsuit.

76.     Similarly, as of December 3, 2014, Kelly claimed that there was only one director or EFP (Kelly), as reflected in the alleged December 3, 2014 "Consent," attached as Exhibit H hereto, purportedly executed by Kelly as EFP's "sole director."  This purported action left EFP with one director, which would not only be oppressive in its elimination of John as a director:  It would also be in violation of EFP's corporate bylaws, which require EFP to have three directors.

77.     John has received no formal notice by way of corporate consent or otherwise of the election of any EFP directors beyond Kelly after December 3, 2014 (or at any other time after Van's death).

78.     Pleading in the alternative, however, Kelly's election of one or two directors in addition to herself does not undermine demand futility, since Kelly still held (and holds) an overwhelming and controlling vote as an EFP director, and Kelly (and likely any other directors) are personally interested in any decision of EFP to sue Kelly.  Stated another way, Kelly's sham or other election of additional directors after December 3, 2014 did not change the fact that Kelly had corporate control over EFP's decision on whether to sue Kelly.  Accordingly, John's demand on EFP to sue Kelly would be just as futile.

**Factors For Injunctive Relief**

79.     John has clearly ascertainable rights in need of protection, as alleged herein. John has an ascertainable right to protect the value of the EFP Stock to which he holds a beneficial interest, which is best promoted by John's retention of his employment, director and officer statuses at EFP.   Additionally, John has an ascertainable right in ensuring that he receives a return on his lifelong investment of his time in EFP, which, like Kelly, John has reasonably expected to receive through salary (employment), amongst other forms of compensation.    Further, John has an ascertainable right in being free from shareholder oppression as that term is defined by Illinois law.   Furthermore, John has an ascertainable right to enforce the Preliminary Agreement.   All of these ascertainable rights are threatened by the conduct alleged herein.

80.     John's irreparable harm is presumed, based on the existence of his ascertainable rights in need of protection.   Alternatively, John faces immediate and irreparable harm if his employment by EFP is not immediately restored, along with his officer and director statuses. Without injunctive relief, John will be less able to "check and balance" Kelly to protect his lifelong investment in EFP.   The irreparable harm suffered by John due to the termination of his employment is beyond that what is suffered by a non-shareholder employee of a company. Employment by EFP is a reasonable expectation of John, a shareholder of EFP, which has been defeated by Kelly's oppression.

81.     Additionally, the lack of an adequate remedy at law to John is presumed. Alternatively, money damages are not a complete and adequate remedy to redress Kelly's oppression of, and other misconduct directed to, John.   Indeed, the threats posed by Kelly to the value of EFP.   This value will be immeasurably diminished if Kelly's "freeze-out" of John is

permitted. Prior to Van's death, John, Van and Kelly all were involved in management, serving as checks and balances on each other. Now, with Van's death and John's freeze-out, EFP is left only with Kelly, by far the one with the least industry experience.

82. John will likely succeed on the merits of his claims set forth herein, for the reasons alleged herein. Also, the balancing of the harms favors John. If John is afforded the requested injunctive relief, EFP will suffer no harm as John will continue to be employed and otherwise involved in EFP as he has been for forty years. EFP has become highly successful due in large part to John's efforts.

## COUNT I—ACTION PURSUANT TO 805 ILCS 5/12.56
## (JOHN AND JOHN TRUST VS. BOTH DEFENDANTS)

83. John and the John Trust adopt and reallege paragraphs 1 through 82 by and for paragraph 83 of Count I.

84. John and the John Trust are entitled to relief pursuant to 805 ILCS 5/12.56(a)(1) as there is a deadlock of directors at EFP. There are two legitimate EFP directors, John and Kelly. Kelly refused to even meet with John to discuss any issues, including, but not limited to, the significant issue of John's Proposal.

85. John and the John Trust are also entitled to relief pursuant to 805 ILCS 12.56(a)(3) because Kelly, who controls EFP, has acted oppressively towards John and the John Trust as alleged herein. Kelly has engaged in a course of conduct against John and the John Trust which is arbitrary, overbearing and/or heavy-handed. In summary, Kelly's oppression of John and the John Trust includes, but is not limited to, disregarding John's Proposal; freezing John out of EFP's management and operations; refusing to respect John's officer and director status; attempting to strip John of his officer and director status; firing employees loyal to John and taking other measures to prevent the flow of EFP information to John; failing and refusing

- 20 -

to fully respect John's rights to inspect EFP's corporate records as a shareholder and director; directing EFP employees not to share EFP corporate information with John; terminating John's employment; refusing to pay Shareholder Payments to John; refusing to honor the Preliminary Agreement; and, otherwise marginalizing and oppressing John as alleged herein. Kelly's conduct has defeated John's and the John Trust's reasonable expectations as shareholders of EFP.

86.     John and the John Trust are also entitled to relief pursuant to 805 ILCS 5/12.56(a)(4), since Kelly is mismanaging EFP's assets and value by refusing to maximize the same through exploration of John's Proposal and other third-parties' interest to buy EFP. Indeed, a sale of EFP may be the best way to maximize shareholder value, and Kelly is therefore mismanaging EFP's assets by foregoing that opportunity. Additionally, upon information and belief, Kelly is mismanaging EFP's assets and value by allowing EFP to lose its S-Corp status.

87.     Accordingly, John and the John Trust are entitled to relief pursuant to 805 ILCS 5/12.56(b), including but not limited to, a buyout of his stock. John also seeks the appointment of an interim officer to report to the Court. John seeks all other relief to which he is entitled pursuant to Section 12.56, 805 ILCS 5/12.60, or other Illinois law, including, but not limited to, temporary, preliminary and permanent injunctive relief.

WHEREFORE, Plaintiffs, JOHN VLAHAKIS and the E. VAN VLAHAKIS DESCENDANTS TRUST NO. 2 U/T/A DATED 10/31/12, respectfully request judgment in their favor and against the Defendants, KELLY VLAHAKIS-HANKS, and VENUS LABORATORIES, INC., pursuant to 805 ILCS 5/12.56, including, but not limited to, the following relief:

(a) temporary, preliminary and permanent injunctive relief, including, but not limited to, all relief to the extent necessary to preserve the *status quo ante* the Parties' dispute, including all relief necessary to preserve John's *status quo ante* officer, director and employment statuses at Venus Laboratories, Inc.;

(b) setting aside any and all corporate actions of Venus Laboratories, Inc. to the extent necessary to redress the harm to Plaintiffs pursuant to 805 ILCS 5/12.56(b)(1);

(c) canceling or altering any and all provisions of the articles of incorporation and/or by-laws of Venus Laboratories, Inc. to the extent necessary to redress the harm to Plaintiffs pursuant to 805 ILCS 5/12.56(b)(2);

(d) removing Kelly Vlahakis-Hanks as a director and officer of Venus Laboratories, Inc. pursuant to 805 ILCS 5/12.56(b)(3);

(e) appointing an independent director and officer of Venus Laboratories, Inc. to report to the Court pursuant to 805 ILCS 5/12.56(b)(4) and 805 ILCS 5/12.56.(b)(7);

(f) ordering that Defendants provide an accounting as to all information relevant to the valuation of Venus Laboratories, Inc. pursuant to pursuant to 805 ILCS 5/12.56(b)(5);

(g) the appointment of a custodian to report to the Court and to manage the business and affairs of Venus Laboratories, Inc. pursuant to 805 ILCS 5/12.56(b)(6);

(h) ordering the Parties to non-binding mediation before this Court or otherwise pursuant to 805 ILCS 5/12.56(b)(7);

(i) damages pursuant to 805 ILCS 5/12.56(b)(10);

(j) ordering Defendants to purchase the Plaintiffs' stock (or the stock held by trusts to which John is a beneficiary) at fair value pursuant to 805 ILCS 5/12.56(b)(11);

(k) ordering the dissolution of Venus Laboratories, Inc. to the extent that the alternative remedies set forth above are deemed insufficient by the Court pursuant to 805 ILCS 5/12.56(b)(5);

(l) ordering Defendants to honor the Preliminary Agreement;

(m) ordering Venus Laboratories, Inc. to pay the Shareholder Payments to John;

(n) appointing an interim custodian and/or receiver pursuant to 805 ILCS 5/12.60; and/or

(o) costs and other relief deemed just.

## COUNT II--BREACH OF FIDUCIARY DUTY
### (JOHN AND JOHN TRUST VS. KELLY ONLY)

88.     John and the John Trust adopt and realleges paragraph 1 through 87 by and for paragraph 88 of Count II.

89.     Kelly has at all relevant times owed John and the John Trust the highest fiduciary duty that one can owe pursuant to Illinois law as the controlling shareholder of EFP, and also as an officer and director of EFP.  Alternatively, Kelly has at all relevant times owed John and/or the John Trust a fiduciary duty by virtue of her position as trustee to the John Trust and as trustee to the Van Trust.

90.     Kelly breached her fiduciary duties to John  and the John Trust for the reasons alleged herein, including, but not limited to, disregarding John's Proposal; freezing John out of EFP's management and operations; stripping John of his director and officer status (or attempting to do so); firing or threatening employees loyal to John and taking other measures to prevent the flow of EFP information to John; failing and refusing to fully respect John's rights to inspect EFP's corporate records as a shareholder and director; directing EFP employees not to share EFP corporate information with John; terminating John's employment; refusing to pay Shareholder Payments to John; refusing to honor the Preliminary Agreement; and, otherwise marginalizing and oppressing John as alleged herein.

91.     As a direct and proximate result of Kelly's breaches of fiduciary duties, John and the John Trust have suffered compensatory damages in excess of $50,000, to be proven at trial. John and the John Trust are also entitled to the recovery of punitive damages against Kelly by virtue of her willful and intentional conduct designed to harm John and the John Trust.

92.     Additionally, John and the John Trust are entitled to an equitable accounting to the extent that they cannot determine the extent of any misuse or waste of EFP and other trust

assets by Kelly as money damages will not adequately compensate John and the John Trust in that situation. Further, John and the John Trust seek all other relief to which they are entitled pursuant to Illinois law, including, but not limited to, temporary, preliminary and permanent injunctive relief.

WHEREFORE, Plaintiffs, JOHN VLAHAKIS the E. VAN VLAHAKIS DESCENDANTS TRUST NO. 2 U/T/A DATED 10/31/12, respectfully request judgment in their favor and against the Defendant, KELLY VLAHAKIS-HANKS, for compensatory damages in the amount of at least $50,000, to be proven at trial, punitive damages to be proven at trial, the imposition of a constructive trust, temporary, preliminary and permanent injunctive relief, a declaratory judgment that John is entitled to Shareholder Payments, costs and other relief deemed just.

### COUNT III--ACTION FOR MANDAMUS AND DAMAGES
### REGARDING EFP CORPORATE RECORDS
### (JOHN AND THE JOHN TRUST VS. BOTH DEFENDANTS)

93.     John  and the John Trust adopt and reallege paragraphs 1 through 92 by and for paragraph 93 of Count III.

94.     John and the John Trust are entitled to relief pursuant to 805 ILCS 5/7.75 because EFP and Kelly have failed and refused to comply with John's Shareholder's Demand.

95.     Separately and independently, John is entitled to relief because EFP and Kelly have failed and refused to comply with his Director's Demand.

96.     John and the John Trust seek mandamus as to their Records Demands.

97.     Further, Kelly is obligated to pay John and the John Trust an amount of up to ten percent (10%) of the value of their EFP Stock due to her violation of 805 ILCS 5/7.75.

98.    Also, John and the John Trust seek all other relief to which they are entitled pursuant to Illinois law, including, but not limited to, temporary, preliminary and permanent injunctive relief.

WHEREFORE, Plaintiffs, JOHN VLAHAKIS the E. VAN VLAHAKIS DESCENDANTS TRUST NO. 2 U/T/A DATED 10/31/12, respectfully request judgment in their favor and against the Defendants, KELLY VLAHAKIS-HANKS, and VENUS LABORATORIES, INC., ordering that the Defendants allow for Plaintiff's inspection of corporate records to the fullest extent of the law; statutory damages pursuant 805 ILCS 5/7.75, temporary, preliminary and permanent injunctive relief, costs and other relief deemed just.

## COUNT IV-DECLARATORY JUDGMENT AS TO JOHN'S PROPOSAL
### (JOHN AND THE JOHN TRUST VS. BOTH DEFENDANTS)

99.    John and the John Trust adopt and reallege paragraphs 1 through 98 by and for paragraph 99 of Count IV.

100.    There is an actual and justiciable controversy between John/the John Trust and Kelly pursuant to the Illinois Declaratory Judgment Act. John and the John Trust, on the one hand, submit that John's Proposal, and any other good faith proposals to buy EFP, should be negotiated and consummated in good faith, while Kelly refuses to do so. Accordingly, John and the John Trust seek a declaratory judgment in their favor.

101.    Further, John and the John Trust seek all other relief to which they are entitled pursuant to Illinois law, including, but not limited to, temporary, preliminary and permanent injunctive relief to preserve the subject of the controversy pending final resolution by the Court.

WHEREFORE, Plaintiffs, JOHN VLAHAKIS the E. VAN VLAHAKIS DESCENDANTS TRUST NO. 2 TRUST DATED 10/31/12, respectfully request judgment in their favor and against the Defendants, KELLY VLAHAKIS-HANKS, and VENUS

LABORATORIES, INC., declaring that the Defendants should negotiate and consummate John's Proposal in good faith, plus temporary, preliminary and permanent injunctive relief, costs and other relief deemed just.

## COUNT V–BREACH OF FIDUCIARY DUTY
## (JOHN AND THE JOHN TRUST DERIVATIVELY ON BEHALF OF EFP VS. KELLY)

102.    John and the John Trust adopt and reallege paragraphs 1 through 101 by and for paragraph 102 of Count V.

103.    Kelly is the controlling shareholder, CEO and director of EFP. In these capacities, Kelly owes a fiduciary duty to EFP.

104.    Kelly breached her fiduciary duties to EFP by disregarding John's Proposal; by, upon information and belief, allowing EFP to lose its S-Corp status; and, the other acts alleged herein.

105.    As a direct and proximate result of Kelly's actions, EFP has been damaged in an amount to be proven at trial, but at least $115,000,000, which represents the differential between the amount of John's Proposal and the Kelly Valuation, plus other damages.

106.    Further, John and the John Trust seek all other relief to which they are entitled to assert on behalf of EFP pursuant to Illinois law, including, but not limited to, temporary, preliminary and permanent injunctive relief.

WHEREFORE, Plaintiffs, JOHN VLAHAKIS and the E. VAN VLAHAKIS DESCENDANTS TRUST NO. 2 U/T/A DATED 10/31/12, derivatively on behalf of VENUS LABORATORIES, INC., respectfully request judgment in their favor and against the Defendants, KELLY VLAHAKIS-HANKS, and VENUS LABORATORIES, INC., as a nominal defendant, for compensatory damages to be proven at trial but at least $115,000,000, punitive

damages, reasonable attorney's fees, temporary, preliminary and permanent injunctive relief, costs and other relief deemed just.

## COUNT VI–EQUITABLE ACCOUNTING
### (JOHN AND THE JOHN TRUST DERIVATIVELY ON BEHALF OF EFP VS. KELLY)

107.    John and the John Trust adopt and reallege paragraphs 1 through 106 by and for paragraph 107 of Count VI.

108.    Because of the complex manner in which EFP's records are maintained, Kelly's obstruction of John's inspection of EFP records, and because further discovery is needed, an equitable accounting is necessary.

WHEREFORE, Plaintiffs, JOHN VLAHAKIS and the E. VAN VLAHAKIS DESCENDANTS TRUST NO. 2 U/T/A DATED 10/31/12, derivatively on behalf of VENUS LABORATORIES, INC. respectfully requests judgment in their favor and against the Defendants, KELLY VLAHAKIS-HANKS, and VENUS LABORATORIES, INC., as a nominal defendant, ordering Defendant KELLY VLAHAKIS-HANKS to provide a full equitable accounting as required by Illinois common law, reasonable attorney's fees, costs and other relief deemed just.

## COUNT VII–BREACH OF FIDUCIARY DUTY
### (JOHN DERIVATIVELY ON BEHALF OF VAN TRUST VS. KELLY)

109.    John adopts and realleges paragraphs 1 through 108 by and for paragraph 109 of Count VII.

110.    Kelly is the trustee of the Van Trust. In this capacity, Kelly owes a fiduciary duty to John, a beneficiary of the Van Trust.

111.    Kelly breached her fiduciary duties to the Van Trust by disregarding John's Proposal; by, upon information and belief, allowing EFP to lose its S-Corp status; and the other

- 27 -

acts alleged herein. In disregarding John's Proposal, Kelly deprived the beneficiaries to the Van Trust of potential proceeds to a transaction arising from John's Proposal.

112. As a direct and proximate result of Kelly's actions, the Van Trust has been damaged in an amount to be proven at trial, but damages would include the Van Trust's share of the differential between the amount of John's Proposal and the Kelly Valuation, plus other damages.

113. Further, John seeks all other relief to which he is entitled pursuant to Illinois law, including, but not limited to, temporary, preliminary and permanent injunctive relief.

WHEREFORE, Plaintiff, JOHN VLAHAKIS, derivatively on behalf of THE E. VAN VLAHAKIS FAMILY TRUST U/T/D 2/26/86, AS AMENDED, respectfully requests judgment in his favor and against the Defendants, KELLY VLAHAKIS-HANKS, and THE E. VAN VLAHAKIS FAMILY TRUST U/T/D 2/26/86, AS AMENDED, as a nominal defendant, for compensatory damages to be proven at trial, punitive damages, temporary, preliminary and permanent injunctive relief, reasonable attorney's fees, costs and other relief deemed just, including, but not limited to, an equitable accounting.

## COUNT VIII-BREACH OF PRELIMINARY AGREEMENT
### (JOHN VS. EFP)

114. John adopts and realleges paragraphs 1 through 113 by and for paragraph 114 of Count VIII.

115. The Parties came to their Preliminary Agreement, expressly agreeing to continue to proceed to memorialize the same in a Formal Agreement, in good faith.

116. The Preliminary Agreement was supported by sufficient offer, acceptance and consideration, as John continued to work for EFP in reliance on the same.

117.    EFP breached the Preliminary Agreement by failing and refusing to memorialize the same in a Formal Agreement and by terminating John's employment and refusing to recognize the John ROFR.  Alternatively, EFP should be estopped from denying the existence of the Formal Agreement since EFP controlled the consummation thereof, and wrongfully prevented the same from occurring.

118.    John is in compliance with the material terms of the Preliminary Agreement.

119.    As a direct and proximate result of EFP's breach, John has suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff, JOHN VLAHAKIS, respectfully requests judgment in his favor and against the Defendant, VENUS LABORATORIES, INC., for compensatory damages; plus temporary, preliminary and permanent injunctive relief, costs and other relief deemed just.

## COUNT IX-SPECIFIC PERFORMANCE OF PRELIMINARY AGREEMENT
### (JOHN VS. EFP)
### (ALTERNATIVELY TO COUNT XIII)

120.    John adopts and realleged paragraphs 1 through 119 by and for paragraph 120 of Count IX as if more fully alleged herein.

121.    Pleading in the alternative, money damages cannot adequately compensate John for EFP's breach of the Preliminary Agreement, which is valid and enforceable.  Equitable relief (specific performance) will provide more complete and adequate relief than money damages.

WHEREFORE, Plaintiff, JOHN VLAHAKIS, respectfully requests judgment in his favor and against the Defendant, VENUS LABORATORIES, INC., ordering said Defendant to specifically perform the Preliminary Agreement; plus declaratory relief; plus temporary, preliminary and permanent injunctive relief, costs and other relief deemed just.

## COUNT X-PROMISSORY ESTOPPEL
### (JOHN VS. EFP)
### (ALTERNATIVELY TO COUNTS XIII AND XIV)

122.    John adopts and realleges paragraphs 1 through 121 by and for paragraph 122 of Count X as if more fully alleged herein.

123.    Pleading in the alternative, and to the extent the Court finds there to be no valid Preliminary Agreement, EFP made unequivocal promises to John for lifetime employment by EFP and to honor the John ROFR.  EFP should have reasonably expected reliance on said promises, as the same were made to induce John to continue with EFP.  John relied on said promises.  Injustice can only be avoided by enforcing said promises.

WHEREFORE, Plaintiff, JOHN VLAHAKIS, respectfully requests judgment in his favor and against the Defendant, VENUS LABORATORIES, INC., ordering said Defendant to honor its promises alleged herein; plus declaratory relief; plus temporary, preliminary and permanent injunctive relief, costs and other relief deemed just.

## COUNT XI-INJUNCTION
### (ALL PLAINTIFFS, DIRECTLY AND DERIVATIVELY ON BEHALF OF EFP AND THE VAN TRUST VS. DEFENDANTS)

124.    Plaintiffs adopt and reallege paragraphs 1 through 123 by and for paragraph 124 of Count XI.

125.    Based on the foregoing, pursuant to 735 ILCS 5/11-101 or otherwise pursuant to Illinois law, Plaintiffs are entitled to temporary injunctive relief to preserve the *status quo ante* the Parties' dispute until the Court can hold preliminary injunction proceedings.  Thereafter, or alternatively, Plaintiffs entitled to preliminary injunctive relief to preserve the *status quo ante* the Parties' dispute until the Court can hold permanent injunction proceedings.

WHEREFORE, Plaintiffs, JOHN VLAHAKIS the E. VAN VLAHAKIS DESCENDANTS TRUST NO. 2 TRUST DATED 10/31/12, directly and derivatively on behalf of THE E. VAN VLAHAKIS FAMILY TRUST U/T/D 2/26/86, AS AMENDED, respectfully request judgment in their favor and against the Defendants, KELLY VLAHAKIS-HANKS, VENUS LABORATORIES, INC., and THE E. VAN VLAHAKIS FAMILY TRUST U/T/D 2/26/86, AS AMENDED, as a nominal defendant, for temporary, preliminary and permanent injunctive relief, costs and other relief deemed just.

PLAINTIFFS,

By: _____
One of their attorneys

Robert H. Lang (6225414)
Emily L. Peel
Thompson Coburn LLP
55 E. Monroe Street, #3700
Chicago, IL 60603
(312) 346-7500

-and-

Elaine S Vorberg (
Dussias Skallas LLP
(312) 226-8840
250 South Wacker Drive, #600
Chicago, IL 60606

## VERIFICATION

The undersigned JOHN VLAHAKIS, declares under penalty of perjury that that the factual statements set forth in the foregoing **Third Amended Verified Complaint For Equitable And Other Relief** are true and correct to the best of his knowledge, information and belief.

_____
John Vlahakis, individually; as Trustee of
the E. VAN VLAHAKIS DESCENDANTS
TRUST NO. 2 TRUST DATED 10/31/12

**CERTIFICATE OF SERVICE**

      I, Robert H. Lang, the attorney for Defendants, certify that a true and correct copy of the foregoing PLAINTIFF'S VERIFIED THIRD AMENDED COMPLAINT FOR EQUITABLE AND OTHER RELIEF was served upon the attorneys of record via CM/ECF on March 10, 2015.

                    By:    /s/ Robert H. Lang

                            Robert H. Lang (6225414)
                            Emily L. Peel
                            Thompson Coburn LLP
                            55 E. Monroe Street, #3700
                            Chicago, IL 60603
                            (312) 346-7500